# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LISA JANICE YARNELL, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL,[1] <br> Commissioner of Social Security, <br><br> Defendant. | Case No.: 1:18-cv-1483- JLT <br><br> ORDER REMANDING THE ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) <br><br> ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF LISA JANICE YARNELL, AND AGAINST DEFENDANT ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY |

Lisa Janice Yarnell asserts she is entitled to a period of disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff seeks judicial review of the decision to deny benefits, arguing the administrative law judge erred in evaluating the record. Because the ALJ erred in evaluating Plaintiff's fatigue and rejecting her statements regarding the severity of her symptoms, the matter is **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

## **BACKGROUND**

On October 21, 2014, Plaintiff filed her application for benefits, alleging disability beginning on March 29, 2013, due to the following conditions: immune disorder; extreme weakness, including "trouble standing and holding things;" fatigue; constant headaches-migraines; flu-like symptoms, including nausea, vomiting, and body aches; pain and swelling in her abdomen; and depression. (Doc.

---

[1] This action was originally brought against Nancy A. Berryhill in her capacity as then-Acting Commissioner. Andrew M. Saul, who is now the Commissioner, has been automatically substituted. *See* Fed. R. Civ. P. 25(d).

1

7-7 at 2; Doc. 7-8 at 14) The Social Security Administration denied the application at the initial level and upon reconsideration. (*See generally* Doc. 7-4) Plaintiff requested a hearing and testified before an ALJ on June 8, 2017. (*See* Doc. 7-3 at 30, 49) The ALJ determined Plaintiff was not disabled under the Social Security Act and issued an order denying benefits on August 30, 2017. (Doc. 7-3 at 30-38) Plaintiff filed a request for review of the decision with the Appeals Council, which denied her request on August 24, 2018. (*Id.* at 2-4) Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## **STANDARD OF REVIEW**

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## **DISABILITY BENEFITS**

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

2

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). If a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **ADMINISTRATIVE DETERMINATION**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4). The process requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider testimonial and objective medical evidence. 20 C.F.R. §§ 404.1527, 416.927.

The ALJ determined, as an initial matter, that Plaintiff last met the insured status requirements on December 31, 2013. (Doc. 7-3 at 32) The ALJ then proceeded to the first step of the sequential evaluation and determined Plaintiff "did not engage in substantial gainful activity during the period from her alleged onset date of March 29, 2013 through her date last insured." (*Id.*) Second, the ALJ found Plaintiff's severe impairments included: "gastritis, irritable bowel syndrome, obesity, migraines, and vitamin D deficiency." (*Id.*) The ALJ noted Plaintiff also alleged "a history of Epstein Barr virus and immune disorder," but found the conditions were "not medically determinable during the period at issue." (*Id.* at 33) (*Id.* at 22) Further, the ALJ found Plaintiff's asthma, depression, and history of lead poisoning were not severe impairments. (*Id.*)

At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (Doc. 7-3 at 34) Next, the ALJ found: "[T]hrough the date last insured, the claimant had the residual functional capacity to perform the full range of light work defined in 20 CFR 404.1567(b)." (*Id.*) With this residual functional capacity, the ALJ determined Plaintiff "was capable of performing past relevant work as a manager fast food services." (*Id.* at 36) Thus, the ALJ concluded at step four that Plaintiff was not disabled as defined by the Social Security Act from March 29, 2013 through her

date last insured.  (*Id.* at 37)

## **DISCUSSION AND ANALYSIS**

Plaintiff argues the ALJ erred at step two by failing to evaluate her chronic fatigue syndrome. (Doc. 14 at 21-25)  In addition, Plaintiff contends the ALJ failed to identify clear and convincing reasons to discount her testimony. (*Id.* at 26-28)  Finally, Plaintiff contends the ALJ erred in evaluating a lay witness statement. (*Id.* at 28)  The Commissioner argues the ALJ's decision "is supported by substantial evidence and free of legal error," and should be upheld by the Court. (Doc. 16 at 9)

**A.  Step Two Findings**

The inquiry at step two is a *de minimus* screening "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yucket*, 482 U.S. 137, 153-54 (1987)).  The purpose is to identify claimants whose medical impairment makes it unlikely they would be disabled even if age, education, and experience are considered.  *Bowen*, 482 U.S. at 153 (1987).  A claimant must make a "threshold showing" (1) she has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe.  *Id.* at 146-47; *see also* 20 C.F.R. § 404.1520(c).  Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment that significantly limits her physical or mental ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(a).

   1.   Medically determinable impairment

The Ninth Circuit determined that a diagnosis from an acceptable medical source is a prerequisite to a finding that a medically determinable impairment exists, and symptoms by themselves are not sufficient to establish such an impairment. *Ukolov v. Barnhart*, 420 F.3d 1002, 1005-06 (9th Cir. 2005).  Plaintiff reported in her "Disability Report"—submitted to the Administration in December 2014— that she suffered from fatigue and extreme weakness, including "trouble standing and holding things."  (Doc. 7-8 at 14)  In February 2015, Plaintiff was diagnosed with Chronic Fatigue Syndrome by Dr. Surinder Dhillon. (Doc. 7-24 at 12)  Thus, Plaintiff's Chronic Fatigue Syndrome was a medically determinable impairment.  *See Ukolov*, 420 F.3d at 1005-06.

   2.   Severity of Plaintiff's impairment

For an impairment to be "severe," it must "significantly limit[]" the claimant's "ability to do

4

basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1522(b), 416.922(b). Plaintiff asserts the ALJ erred at step two by not addressing her diagnosis of Chronic Fatigue Syndrome, though it came after her date last insured. (Doc. 14 at 21) On the other hand, the Commissioner argues Plaintiff's assertion that the ALJ should have addressed this impairment at step two fails for timeliness because "[t]his diagnosis occurred more than a year after Plaintiff's date last insured, and does not at all show disability dating back to 2013." (Doc. 16 at 4).

Notably, it is undisputed that the medical record establishes that Plaintiff repeatedly reported fatigue in 2013 and 2014, before her diagnosis of Chronic Fatigue Syndrome. As the Commissioner acknowledges, the non-examining physicians commented on Plaintiff's reported fatigue, but found "no [diagnosis] given as a reason for her fatigue complaint." (Doc. 16 at 5, citing AR 81 and 92 [Doc. 7-4 at 8, 19]) Thus, it is clear the reviewing physicians were aware of at least the *symptom*, if not the diagnosis, in reviewing the record. The ALJ, however, had the benefit of knowing Plaintiff's ultimate diagnosis with Chronic Fatigue Syndrome, yet did not address whether her fatigue affected her ability to do basic work activities at step two.

Moreover, the ALJ did not address evidence related to Plaintiff's fatigue elsewhere in the decision, or make any findings related to the effect upon her functional limitations. Without such analysis, it is not clear that the ALJ accounted for Plaintiff's fatigue in formulating the residual functional capacity at step four, which must include "all of [a claimant's] medically determinable impairments," whether severe or not. 20 C.F.R. §§ 405.1545(a)(2), 416.945(a)(2). Thus, the Court finds the ALJ erred by ignoring Plaintiff's fatigue—and subsequent diagnosis with Chronic Fatigue Syndrome—in evaluating the medical record.

**B.      Administrative Hearing Testimony**

Plaintiff testified that she worked at Fosters Freeze for thirteen years. (Doc. 7-3 at 62) She stated that as a general manager, she had the authority to hire and fire employees. (*Id.* at 59) Plaintiff said she supervised twenty-one employees, scheduled shifts, ordered inventory, cleaned the restaurants, and worked at the cash register. (*Id.* at 59-61) She estimated that she stood "[a]bout 10 hours" a day, and lifted up to "35, 40 pounds" when putting stock away. (*Id.* at 60)

5

| | |
|---|---|
| 1 | Plaintiff said her "physical abilities" caused her to no longer be able to work at Fosters Freeze. |
| 2 | (Doc. 7-3 at 62-63) She explained she planned to have a surgery and trained others "to do what [she] |
| 3 | did." (*Id.* at 62) Plaintiff explained she "physically was unable to perform the lifting, and standing, and |
| 4 | bending;" but she "was able to work from home and… make phone calls." (*Id.*) After working at |
| 5 | Fosters Freeze, Plaintiff began her own foot spa. (*Id.* at 58) |
| 6 | She stated she "became physically fatigued" in March 2013 and "kept dropping things." (Doc. |
| 7 | 7-3 at 63) Plaintiff said she could not stand or sit down, and she had swelling. (*Id.*) She explained that |
| 8 | she lived in a retirement community, and she "was afraid that [she] was going to injure one of the |
| 9 | clients." (*Id.*) Plaintiff reported she "had somebody take over [her] area for a short time" and left her |
| 10 | equipment behind, "keeping [her] clients happy." (*Id.*) However, Plaintiff said she "was not able to |
| 11 | return back to work." (*Id.*) She testified that she last worked on May 7, 2013. (*Id.* at 57-58) |
| 12 | Plaintiff stated her walking partner "realized that [she] was having an issue," because she "fell a |
| 13 | couple of times while [they] were walking." (Doc. 7-3 at 64) Plaintiff said she "walked four and a half |
| 14 | miles, for a year with her [friend]," who recommended that Plaintiff be "checked out." (*Id.*) |
| 15 | She said that in 2013, she was "very fatigued, very weak," and "felt like [she] was being |
| 16 | poisoned." (Doc. 7-3 at 67) She testified she "could not lift a gallon of milk" or "even lift [her] plate to |
| 17 | the cabinet," and would "have to use both hands to lift stuff up." (*Id.* at 67) She did not believe she |
| 18 | was able to lift ten pounds on a regular basis. (*Id.*) Plaintiff stated she "was not even able to go to the |
| 19 | grocery store." (*Id.*) She explained that when she did, she had to sit down because she could not walk |
| 20 | anymore, and she "had to have somebody with [her] all of the time." (*Id.* at 67-68) She said she was |
| 21 | later diagnosed with Epstein-Barr, and she did not know that her fatigue, weakness, bloating, and |
| 22 | nausea "was all part of it." (*Id.* at 68) |
| 23 | 1. <u>Standards for reviewing a claimant's statements</u> |
| 24 | Plaintiff contends the ALJ "failed to provide specific, clear and convincing reasons to reject |
| 25 | [her] testimony" regarding the severity of her symptoms, including fatigue and pain. (Doc. 14 at 27) |
| 26 | The Commissioner argues that "[t]he ALJ appropriately found Plaintiff's testimony not fully supported |
| 27 | by the record. (Doc. 16 at 6) |
| 28 | In evaluating a claimant's statements, an ALJ must determine first whether objective medical |

evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must make specific findings as to the claimant's credibility by setting forth clear and convincing reasons for rejecting his subjective complaints. *Id.* at 1036; *see also Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008).

If there is objective medical evidence of an impairment, an ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because it is unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991) The Ninth Circuit explained:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

*Smolen v. Chater* 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in *Cotton*, 799 F.2d 1403). Further, an ALJ is directed to identify "specific reasons for the weight given to the individual's symptoms," in a manner such that the claimant "and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling[2] 16-3p, 2017 WL 5180304 (2017).

An ALJ may consider additional factors to assess a claimant's statements including, for example: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of reported by a claimant. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (an ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a

---

[2] Social Security Rulings (SSRs) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). Although they do not have the force of law, the Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

7

claimant's testimony and conduct, and a claimant's daily activities).

2. The ALJ's analysis of Plaintiff's statements

The ALJ determined first that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," including "difficulty with standing, lifting, and bending." (Doc. 7-3 at 35) However, the ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record...." (*Id.*) In making this finding, the ALJ stated:

> [T]hese statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence. The claimant alleges that she stopped working in February 2013 as an owner of a pedicure spa, but treatment records indicate that she reported that she loved her job and was doing financially well in June 2013 despite her complaints (Exhibit 16F, p. 90). It also appears that she has had additional diagnoses, objective findings, and symptoms after her date last insured.
>
> A CT of the abdomen and pelvis in March 2013 indicated possible gastritis and diverticulosis without diverticulitis (Exhibit 3F, p. 10). In April 2013, the claimant was complaining of abdominal pain bloating dysphagia heartburn nausea and vomiting (Exhibit 5F, p. 11). An EGD with biopsy indicated mild gastritis and chronic inflammation with no malignancy (Exhibits 4F, p. 1; 16F, pp. 94, 98). Providers recommended a high fiber, gluten free diet with exercise (Exhibits 16F, pp. 98, 112, 115).
>
> In June 2013, the claimant presented to her provider with complaints of fatigue, weakness, and headaches (Exhibit 5F, pp. 4, 5). She told her provider that she had recently been treated for pneumonia (Exhibit 5F, p. 4). She also reported that she had been in good health and was exercising until one and a half years prior, her symptoms had waxed and waned, and they progressively worsened (Exhibit 5F, p. 4). Her provider ordered testing for possible diseases such as mononucleosis, leukemia, and vitamin D deficiency (Exhibit 5F, p. 6). Testing was negative, except for low vitamin D levels and high C reactive protein (Exhibits 5F, pp. 7-10; 7F, pp. 2, 5, 6, 32, 34; 16F, p. 90). The record indicates complaints of headaches that were intermittent and daily (Exhibits 7F, p. 36; 8F, p. 12). The claimant underwent occipital block for headaches at this time (Exhibit 16F, p. 92).

(Doc. 7-3 at 35-36) Plaintiff contends this analysis was insufficient to "rise to the 'clear and convincing' standard required of the ALJ. (Doc. 14 at 27)

a. Inconsistent statements

An ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).

In this case, the ALJ seems to imply that Plaintiff gave inconsistent statements regarding her

work, and that her testimony was discounted on this basis. (Doc. 7-3 at 35) It is unclear where the ALJ came up with the statement about February 2013, as Plaintiff testified she stopped working in May 2013, which the ALJ acknowledged elsewhere in the decision. (*Id.* at 35, 57-58) In June 2013, Plaintiff's physician inquired about her stress, and Plaintiff responded she was "under no stress." (Doc. 7-19 at 29) In addition, the treatment notes indicated Plaintiff said: "financially she is doing good she loves her job she's got good clientale (sic) with her manicurist profession with good results." (*Id.*) Plaintiff also testified that when she initially stopped working, she kept the foot spa open and provided supplies, and "had somebody take over [her] area for a short time." (Doc. 7-3 at 63) Given Plaintiff's testimony that she kept the business open and had another person covering her position for a period, it is not clear that her statement that she stopped working in May 2013 is inconsistent with the report that she loved her work in June 2013. Moreover, the ALJ did not make a specific finding that Plaintiff gave inconsistent statements or lacked candor regarding her work history. Thus, Plaintiff's statements regarding her work history do not support the ALJ's decision to give less weight to her statements regarding the severity of her symptoms prior to the date last insured.

### b. Objective medical evidence

In general, "conflicts between a [claimant's] testimony of subjective complaints and the objective medical evidence in the record" can constitute "specific and substantial reasons that undermine . . . credibility." *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). The Ninth Circuit explained, "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis"). Because the ALJ did not base the decision solely on the fact that the medical record did not support the degree of symptoms alleged by Plaintiff, the objective medical evidence was a relevant factor evaluating her subjective complaints.

If an ALJ cites the medical evidence, it is not sufficient for the ALJ to simply state that the testimony is contradicted by the record. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)

("general findings are an insufficient basis to support an adverse credibility determination"). Rather, an ALJ must "specifically identify what testimony is credible and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ must identify "what evidence suggests the complaints are not credible"). Here, the ALJ failed to identify the portions of Plaintiff's testimony he believed were inconsistent with the medical record. Rather, the ALJ provided only a summary of the medical record from the relevant period. (*See* Doc. 7-3 at 35-36)

As the Ninth Circuit explained, "summariz[ing] the medical evidence supporting [the] RFC determination... is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in order to ... ensure that the claimant's testimony was not arbitrarily discredited." *See, e.g., Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015). Consequently, "the observations an ALJ makes as part of the summary of the medical record are not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility." *Argueta v. Colvin*, 2016 U.S. Dist. LEXIS 102007 at *44 (E.D. Cal. Aug. 3, 2016).

In *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony. *Id.*, 806 F. 3d at 491. The district court identified inconsistencies in the ALJ's summary of the medical record that it gave rise to reasonable inferences about Plaintiff's credibility. *Id.* On appeal, the Ninth Circuit determined the ALJ failed to identify the testimony she found not credible and did not link that testimony to support the adverse credibility determination. *Id.* at 493. The Court explained that even if the district court's analysis was sound, the analysis could not cure the ALJ's failure. *Id.* at 494. Likewise, here, the ALJ offered no more than a summary of the medical evidence and did not identify the testimony he found was not credible. Because the ALJ failed to link the findings in the medical record to Plaintiff's testimony—or otherwise reject the functional limitations to which Plaintiff testified—the ALJ made an error the Court is unable to cure. *See Greger*, 464 F.3d at 972; *Brown-Hunter*, 806 F.3d at 494.

**C.    Lay Witness Statement**

Carla LaLonde, Plaintiff's friend and neighbor completed a "Function Report – Adult – Third Party" on December 30, 2014. (Doc. 7-8 at 32) The ALJ must consider such statements from

"nonmedical sources" in evaluating the severity of a claimant's symptoms. 20 C.F.R. § 404.1513(a)(4); *Merrill v. Apfel*, 224 F.3d 1083, 1085 (9th Cir. 2000) ("an ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members"). To discount the testimony of a lay witness, the ALJ must give specific, germane reasons for rejecting the opinion of each witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993); *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). For example, an ALJ can reject lay witness testimony to the extent that it conflicts with other testimony, the record of the claimant's activity, and the medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001).

The ALJ addressed the lay witness statement from Ms. LaLonde and gave it "little weight," stating:

> Ms. Lalonde reported that the claimant was her walking partner, but she said the claimant could not work, was in constant pain, and had no energy (Exhibit 4E p.6). She also reported that the claimant helped care for a dog, she wore sweatpants, did not fix her hair, and she was depressed because of her limitations (Exhibit 4E p. 7). The claimant prepared fresh food, did laundry and some light cleaning throughout the day, drove, shopped in stores, and was able to handle her finances (Exhibit 4E pp. 8-9). However, she was no longer able to take walks, or even walk around the block (Exhibit 4E p. 10). She was no longer social and had withdrawn because she did not feel well (Exhibit 4E p. 10). Ms. Lalonde said the claimant could walk 1/2 block, her attention varied, and she was able to follow instructions well (Exhibit 4E p. 11). She did not handle stress or changes in routine well (Exhibit 4E p. 12). I have considered this report, but I give it little weight, as it was completed one year after the claimant's last insured, and is not necessarily relevant to the period at issue.

(Doc. 7-3 at 36) Plaintiff asserts the ALJ erred with this analysis and failed to identify "a germane reason to discount Ms. LaLonde's testimony." (Doc. 14 at 28)

Plaintiff observes that Ms. LaLonde reported being friends with Plaintiff "for the previous six years" and seeing Plaintiff daily. (Doc. 14 at 28-29) Plaintiff argues, "The ALJ's reasoning that Ms. LaLonde's statements did 'not necessarily' relate to the period at issue is an assumption and contrary to Ms. LaLonde's testimony." (*Id.* at 29) Plaintiff notes she "testified at [the] administrative hearing that it was her walking partner (Ms. LaLonde) that urged her to see a doctor due to the onset of intense fatigue causing falls." (*Id.*) In addition, Plaintiff observes that "[t]he ALJ did not make any inquiry at the administrative hearing as to the duration and frequency of Ms. LaLonde's contact with Ms. Yarnell during the relevant time period." (*Id.*) According to Plaintiff, "Without more, the ALJ's incorrect assumption – and absent any supporting evidence – does not constitute a specific, germane reason

sufficient to disregard Ms. LaLonde's probative statements." (*Id.*)

On the other hand, the Commissioner argues the ALJ did not err in addressing the statement from Ms. LaLonde. (Doc. 16 at 9) The Commissioner asserts, "whether Plaintiff was disabled by December 31, 2013 is legally dispositive, thus, the ALJ is rational in finding that Ms. LaLonde's remote-in-time statements—which do not separate out any time period—to be of diminished relevance in light of the overall record." (*Id.*, citing *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)). In addition, the Commissioner notes that "Plaintiff faults the ALJ for not asking about Ms. LaLonde at the hearing, but points to no such legal obligation." (*Id.*)

Significantly, a review of Ms. LaLonde's statement reveals that it is written in the present tense, which indicates Ms. LaLonde was addressing Plaintiff's *current* level of functioning in December 2014. For example, Ms. LaLonde wrote Plaintiff "is in constant pain [and] has no energy." (Doc. 7-8 at 32) She also noted Plaintiff "tries to clean, feed her husband [and] animals," and was caring for her husband who "is recovering from prostrate surgery." (*Id.* at 33) Further, Ms. LaLonde indicated Plaintiff "doesn't dress up anymore [and] just wears sweats." (*Id.* at 33) Plaintiff "was very active in sports" and "is not able to do anything"—but does not indicate when the change to Plaintiff becoming inactive, occurred. (*Id.*) Because Ms. LaLonde addresses Plaintiff's current level of functioning in December 2014—approximately a year after her date last insured—without any indication that Plaintiff had the same level of functioning for a year or more, the ALJ did not err by giving the report little weight because it was "not necessarily relevant to the period at issue." *See Owens v. Colvin*, 2013 WL 1914407 (W.D. Wash. Apr. 3, 2013) (finding an ALJ did not err in giving less weight to an opinion that "was not offered during the relevant period" and was "offered in the present tense").

Further, Plaintiff fails to show the ALJ had a duty to obtain additional information related to the lay witness statement. As noted by the Commissioner, Plaintiff has not cited authority to support this duty, and the Court has located none. To the contrary, courts have rejected the argument that an ALJ has an obligation to seek additional information regarding lay witness testimony. *See, e.g., Bracken v. Astrue*, 140 Soc. Sec. Rep. Service 180, 2009 WL 542214 at *10 (C.D. Cal. Mar. 3, 2009) (disagreeing with the plaintiff's assertion that "the ALJ failed to properly develop the record when he failed to ascertain additional information regarding the lay witness testimony"); *Tushner v. Astrue,* 2012 WL

1481493 (Dist. Or. Apr. 27, 2012) ("Plaintiff cites to no authority, and this Court is not aware of any, that requires an ALJ to elicit additional information from a lay witness in order to fully and fairly develop the record").

Consequently, the Court finds the ALJ identified a proper, germane reason for giving "little weight" to the statement from Ms. LaLonde, and Plaintiff fails to show the ALJ erred in evaluating the lay witness evidence.

**D.      Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)). Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988). The Ninth Circuit explained that "where the ALJ improperly rejects the claimant's testimony regarding [her] limitations, and the claimant would be disabled if [her] testimony were credited," the testimony can be credited as true, and remand is not appropriate. *Lester*, 81 F.3d at 834.

Importantly, courts retain flexibility in crediting testimony as true, and may remand for further proceedings to address a claimant's statements regarding the severity of her symptoms. *See, e.g., Bunnell*, 947 F.2d at 348 (affirming the district court's order remanding for further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints …"). Because the findings of the

ALJ are insufficient to determine whether Plaintiff's statements regarding the severity of her symptoms—and her reported fatigue— prior to her date last insured should be credited as true, the matter should be remanded for the ALJ to re-evaluate the evidence.

## **CONCLUSION AND ORDER**

For the reasons set for above, the Court finds the ALJ erred in evaluating the record related to Plaintiff's fatigue and statements regarding the severity of her symptoms, and the administrative decision should not be upheld by the Court. *See Sanchez*, 812 F.2d at 510. Thus, the Court **ORDERS**:

1. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and
2. The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Lisa Janice Yarnell, and against Defendant Andrew M. Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated: **March 19, 2020**     **/s/ Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE